**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

|  |  |
|---|---|
| **GINA KUHLMAN,** | **Case No. 1:22-cv-00536** |
| **Plaintiff,** | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **CITY OF CLEVELAND, et al.,** | |
| | **MEMORANDUM OPINION & ORDER** |
| **Defendants.** | |

This matter is before the Court upon Defendants' Motion for Judgment on the Pleadings filed on November 9, 2022 (Doc No. 50, "Defendants' Motion"), Plaintiff's Motion to Strike filed on January 9, 2023 (Doc. No. 64), Defendants' Motion for Leave to Supplement their Motion for Judgment on the Pleadings filed on January 20, 2023 (Doc. No. 68), and Defendants' Motion to Strike filed on February 7, 2023 (Doc. No. 73).  All four motions are now ripe for decision.

For the reasons set forth herein, Defendants' Motion for Judgment on the Pleadings (Doc. No. 50) is GRANTED IN PART and DENIED IN PART, Plaintiff's Motion to Strike (Doc. No. 64) is DENIED, Defendants' Motion for Leave to Supplement their Motion (Doc. No. 68) is DENIED as MOOT, and Defendants' Motion to Strike (Doc. No. 73) is DENIED as MOOT.

## I.    Background

### A.    Relevant Facts

The Court incorporates the factual allegations as set forth in the Court's accompanying Memorandum Opinion and Order addressing the pending motions to dismiss.  (Doc. No. 75.)

At issue herein is the body camera footage of Defendant Haggerty attached to the Answer of Defendants Grasha and Haggerty as Exhibits A through C.  These Exhibits contain portions of

Haggerty's body camera footage from the incident.  Certain portions of Exhibit A and B are redacted for privacy concerns.

Exhibit A is a video 43 minutes and 50 seconds in length, and it contains footage of Defendants Haggerty and Grasha arriving upon the scene of the incident, interacting with Plaintiff, and then driving Plaintiff to the hospital.  Throughout this clip, Defendants Haggerty and Grasha discuss taking Plaintiff to the hospital, reading her the "2255 form," and getting a urine sample or a refusal to provide a sample.  Defendants Haggerty and Grasha also state that they are going to take Plaintiff to the hospital so that Plaintiff's head can be examined.

The video picks back up at Exhibit B, which is a clip that is exactly one minute long and contains video footage of Plaintiff in the hospital.  In this clip, the volume is muted until 0:30, at which point Defendant Haggerty asks Plaintiff: "You're gonna take the test?"  Plaintiff nods and says yes, and Defendant Grasha again asks, "Yes, you're gonna take the test? Ok, that makes it easier."  A nurse is also visible in the video and appears to be assisting Plaintiff in removing her clothing and putting on a hospital gown.  The remaining seconds of the video are blurred for redaction purposes and Plaintiff is not visible.

The next video, Exhibit C, is 23 minutes and 49 seconds in length, and contains footage from a police car, seemingly after Plaintiff and Defendants Grasha and Haggerty have exited the hospital.  In this video, Defendant Haggerty tells Plaintiff that she had to instruct the nurse to "throw away" her urine test because Plaintiff refused the test on three separate occasions.  Defendant Haggerty tells Plaintiff that her three refusals "trumped" her one agreement to take the urine test.

2

B. **Procedural History**

The Court incorporates the case's procedural history as set forth in the Court's accompanying Memorandum Opinion and Order addressing the pending motions to dismiss. (Doc. No. 75.)

In addition, on November 9, 2022, Defendants filed a Motion for Judgment on the Pleadings. (Doc No. 50.) Plaintiff filed a Motion for leave to file her Opposition to Defendants' Motion instanter on January 31, 2023 (Doc. No. 69), which the Court granted. Plaintiff then filed a duplicative Opposition to Defendants' Motion on February 3, 2023. (Doc. No. 71.) On February 7, 2023, Defendants filed a Motion to Strike Plaintiff's Second Brief in Opposition to Defendants' Motion. (Doc. No. 73.) On February 9, 2023, Defendants filed a Reply in support of their Motion. (Doc. No. 74.)

On January 9, 2023, Plaintiff filed a Combined Motion to Strike Non-Documentary Exhibits Attached to the Answer of Grasha and Haggerty and Motion to Strike or Deny Defendants' Motion for Judgment on the Pleadings ("Plaintiff's Motion to Strike"). (Doc. No. 64.) On January 20, 2023, Defendants filed an Opposition to Plaintiff's Motion to Strike. (Doc. No. 67.) On that same date, Defendants also filed a Motion for Leave to Supplement their Motion for Judgment on the Pleadings. (Doc. No. 68.) On February 3, 2023, Plaintiff filed an Opposition to Defendants' Motion for Leave to Supplement its Motion for Judgment on the Pleadings. (Doc. No. 72.)

II. **Standard of Review**

A. **Motions to Strike**

On its own or upon a motion, a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "An immaterial matter is that which has 'no bearing on the subject matter of the litigation,'" while "[i]mpertinent

3

allegations include statements that are not necessary to the issues presented." *McKinney v. Bayer Corp.*, 2010 WL 2756915, at *1 (N.D. Ohio July 12, 2010) (quoting *Johnson v. Cty. of Macomb*, 2008 WL 2064968, at *1 (E.D. Mich. May 13, 2008)). A scandalous matter "refers to 'any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court.'" *Id.* (quoting *Pigford v. Veneman*, 215 F.R.D. 2, 4 (D.D.C. 2003)).

"A court has broad discretion in determining whether to grant a motion to strike." *Id.* at *2. However, "motions to strike are disfavored and granted only where the allegations are clearly immaterial to the controversy or would prejudice the movant." *Frisby v. Keith D. Weiner & Assocs. Co., LPA*, 669 F. Supp. 2d 863, 865 (N.D. Ohio 2009). Although Rule 12(f) only applies to pleadings, a court has "the inherent authority to strike non-pleadings in order to manage its docket." *Taylor v. JP Morgan Chase Bank, N.A.*, 2018 WL 5777497, at *3 (E.D. Tenn. Nov. 2, 2018).

**B.      Motion for Judgment on the Pleadings**

Pursuant to Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)).

The same standard for deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim applies to a Rule 12(c) motion for judgment on the pleadings. *See Roth v. Guzman*, 650 F.3d 603,

605 (6th Cir. 2011).  Thus, to survive a Rule 12(b)(6) or Rule 12(c) motion, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'"  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the Complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'"  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555-56).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."'"  *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).  Nonetheless, while "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not

5

unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

When ruling on a Rule 12(c) motion, the Court considers all available pleadings and can also consider "any documents attached to, incorporated by, or referred to in the pleadings." *Ritter v. Bd. of. Educ. of Arcadia Local Sch.*, 535 F. Supp. 3d 690, 693 (N.D. Ohio 2021) (quoting *Dudek v. Thomas & Thomas Attorneys & Counselors at Law, LLC*, 702 F. Supp. 2d 826, 832 (N.D. Ohio 2010)).

III.     **Analysis**

A.     **Plaintiff's Motion to Strike**

In her Motion to Strike, Plaintiff argues that the three body camera videos attached as exhibits to the Answer of Defendants Haggerty and Grasha should be stricken.  Plaintiff argues that these exhibits (1) are evidentiary in nature and not proper at the pleading stage; (2) are not written instruments contemplated by Fed. R. Civ. P. 10(c); (3) do not "blatantly contradict nor utterly discredit" Plaintiff's version of events; and (4) contradict the spirit behind the Court's CMC Order and prejudices Plaintiff.  (Doc. No. 64.)  Defendants argue that the body camera videos were properly attached to Defendants' Answer and body camera footage is allowed to be used when the video "'utterly discredits' the plaintiff's version of events."  (Doc. No. 67.)  Both parties reiterate these arguments in their briefing on Defendants' Motion for Judgment on the Pleadings.

In determining whether a court can consider body camera footage at this stage of the proceedings, the Sixth Circuit has explained:

> At this stage of the litigation, "our decision rests primarily upon the allegations of the complaint." *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008). But we have allowed the use of a video when deciding a Rule 12 motion if the video "utterly discredits" the plaintiff's version of events. *Bailey*, 860 F.3d at 386–87 (brackets

omitted) (quoting *Scott v. Harris*, 550 U.S. 372, 380–81, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007)) (collecting cases from the Second, Fifth, and Seventh Circuits). If "no reasonable jury could watch the video" and agree with the plaintiff, the video "allows us to ignore the 'visible fiction' in his complaint." *Id.* at 386, 127 S.Ct. 1769. Said another way, we do not accept a plaintiff's version of an arrest as true (even at this motion to dismiss stage) if a video shows that plaintiff's "pleadings internally contradict verifiable facts central to his claims[ ] that make[ ] his allegations implausible." *Id.* at 387, 127 S.Ct. 1769. In such a situation, the court should not rely on the allegations in the complaint, but should instead "view[ ] the facts in the light depicted by the videotape." *Scott*, 550 U.S. at 380–81, 127 S.Ct. 1769.

*Osberry v. Slusher*, 750 F. App'x 385, 390 (6th Cir. 2018).

The Court finds Plaintiff's arguments to strike unavailing.  The Complaint refers to the body camera footage (Doc. No. 43-2, ¶ 58), and the footage is central to the claims herein as the body camera videos depict the interactions by and between Plaintiff, Defendant Haggerty, and/or Defendant Grasha that are the subject of Plaintiff's Complaint.  However, the Court will not consider the body camera footage in its analysis of Defendants' Motion for Judgment on the Pleadings.  Here, the body camera footage does not "utterly discredit" Plaintiff's version of events.  *See Osberry*, 750 F. App'x at 390.  While Defendants argue that the body camera footage shows that Plaintiff "refused" to provide the police with a urine sample, that is simply not the case.  Rather, the body camera footage shows Plaintiff agreeing to take the urine test, and then skips to footage showing Defendant Haggerty stating that Plaintiff refused to take the urine test three times.  There is no actual video footage of Plaintiff's alleged refusals to take the urine tests.  The body camera footage, thus, does not "utterly discredit" Plaintiff's allegations that she submitted to a urine test, the results of that test were negative, and Defendant Haggerty instructed the nurse to discard the urine.

Thus, the Court will rely on the well-pleaded allegations in the Complaint and leave further evaluation of the videos for summary judgment and/or for the jury at trial.

Accordingly, Plaintiff's Motion to Strike is DENIED. Defendants' Motion for Leave to Supplement their Motion for Judgment on the Pleadings is hereby rendered MOOT.

### B. Defendants' Motion for Judgment on the Pleadings

#### i. Count I, Malicious Prosecution and False Arrest

In their Motion for Judgment on the Pleadings, Defendants argue that Plaintiff's federal claims against Defendants Haggarty and Grasha fail because Haggerty and Grasha are entitled to qualified immunity. (Doc. No. 50 at 6-10.) Specifically, Defendants argue that Plaintiff's federal claim for false arrest and malicious prosecution fails because there was no constitutional violation as probable cause existed. (*Id.* at 7-10.) Defendants further argue that there is no clearly established right at issue here. (*Id.* at 10.)

Plaintiff argues that probable cause for her arrest did not exist as Plaintiff was not arrested until after Plaintiff submitted to a urine test and that test came back negative for drugs and alcohol. (Doc. No. 69-1 at 10.) Plaintiff further argues that Plaintiff has sufficiently plead violations of her clearly established constitutional rights. (*Id.* at 11-12.)

Under the doctrine of qualified immunity, "courts may not award damages against a government official in his personal capacity unless 'the official violated a statutory or constitutional right,' and 'the right was "clearly established" at the time of the challenged conduct.'" *Lane v. Franks*, 573 U.S. 228, 243 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). While qualified immunity is usually an issue for summary judgment, the Sixth Circuit has "affirmed grants of judgment on the pleadings where the plaintiff did not plead a clearly established [constitutional] violation." *Newell v. Cent. Mich. Univ. Bd. of Trs.*, 2021 WL 3929220, at *6 (6th Cir. Sept. 2, 2021)

(citing *Clark v. Stone*, 998 F.3d 287, 299-300 (6th Cir. 2021); *Jasinski v. Tyler*, 729 F.3d 531, 538-540 (6th Cir. 2013)).

At the pleading stage, the Court must determine "whether the complaint plausibly alleges 'that an official's acts violated the plaintiff's clearly established constitutional right.'" *Siefert v. Hamilton Cty.*, 951 F.3d 753, 762 (6th Cir. 2020) (quoting *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011)). "If, taking all the facts as true and reading all inferences in the plaintiff's favor, the plaintiff has not plausibly show[n] a violation of his clearly established rights, then the [official] is entitled to immunity from suit." *Id.*; *see also Crawford v. Tilley*, 15 F.4th 752, 766 (6th Cir. 2021).

While the Sixth Circuit has held that "it is generally inappropriate for a district court to grant a Rule 12(b)(6) motion to dismiss on the basis of qualified immunity," *Buddenberg v. Weisdack*, 939 F.3d 732, 738-39 (6th Cir. 2019), the Sixth Circuit recently clarified (and limited) this statement, as follows:

> We held, long before *Buddenberg* and *Wesley*, that district courts have "a duty to address" qualified immunity when it is "properly raised prior to discovery." After all, qualified immunity shields government defendants not merely from liability, but also from litigation and discovery, because "[i]nquiries of this kind can be peculiarly disruptive of effective government," so they could not (and do not) give license to deny qualified immunity, without a reasoned opinion, whenever the defense is raised in a Rule 12 motion.
>
> However, as we recently explained in *Crawford*, *Wesley* does have a point: analyzing the second prong of qualified immunity—whether the alleged constitutional violation is clearly established — "is sometimes difficult" on the pleadings, since that "inquiry may turn on case-specific details that must be fleshed out in discovery." *Crawford,* 15 F.4th at 765 (collecting cases). That, *Crawford* explained, is what *Wesley*'s "at best imprecise" language meant to convey. *Crawford*, 15 F.4th at 763 ("[M]ost statements of this proposition are careful to explain that its application rests on qualified immunity's clearly established prong."); *id.* at 765.
>
> Still, that "is only a 'general preference,' not an absolute one." *Siefert*, 951 F.3d at 761 (quoting *Guertin*, 912 F.3d at 917); *Crawford,* 15 F.4th at 765 (explaining that "the inquiry is nuanced" and not reducible to a hard-and-fast rule). In some cases, the

clearly established prong may be determined on the pleadings. Indeed, *Buddenberg* itself determined, on appeal from the denial of a motion to dismiss raising qualified immunity, that the plaintiff's "right to report public corruption, unethical conduct, and sex-based discrimination within her workplace was clearly established." 939 F.3d at 741.

**More importantly, *Crawford* made crystal clear that that general preference does not at all cover qualified immunity's first prong—whether the complaint plausibly alleged a constitutional violation. 15 F.4th at 764–65 (discussing *Iqbal*, 556 U.S. at 687, 129 S.Ct. 1937, which reversed the denial of qualified immunity raised in a Rule 12(b)(6) motion after concluding that the plaintiff failed to plausibly plead a constitutional violation). Put differently, if the complaint fails to allege facts plausibly showing the violation of a constitutional right (regardless of whether that right was clearly established), granting qualified immunity is appropriate on the pleadings**. *Id.; see Siefert,* 951 F.3d at 762. The assertion of qualified immunity, by itself, does not change that.

So, in this case, as in every other case in which a defendant timely raises qualified immunity, the district court was required to determine whether Myers plausibly alleged a constitutional violation and, if so, whether that right was clearly established.

*Myers v. City of Centerville, Ohio*, 41 F.4th 746, 758-59 (6th Cir. 2022) (emphasis added) (cleaned up); *see also Batton v. Sandusky Cty., Ohio*, 2023 WL 375206, at *4 (N.D. Ohio Jan. 24, 2023) ("Recently, the Sixth Circuit clarified a district court errs by failing to meaningfully review a request for qualified immunity on a motion for judgment on the pleadings." (citing *Myers*, 41 F.4th at 758-59)). In accordance with *Myers*, the Court will proceed to address the question of whether Plaintiff adequately pled that Defendants Haggerty and Grasha violated her clearly established rights.

Defendants argue that probable cause existed to believe Plaintiff was impaired to arrest her and probable cause existed because Plaintiff "did not consent to government testing" of her urine sample. (Doc. No. 50 at 7-9.) Thus, Defendants argue, because probable cause existed, there was no constitutional violation and Plaintiff's claim for malicious prosecution and false arrest fails. (*Id.*) This entire argument, however, is based on the body camera footage the Court has already determined it cannot and will not consider at this stage of the proceedings. *See supra*. Because the body camera

10

footage does not "utterly discredit" Plaintiff's version of events, the Court is limited in its review to the well-pleaded allegations of the Complaint.

Here, the Complaint plausibly alleges that Defendants Haggerty and Grasha did not have probable cause to arrest her.  The Complaint alleges that Plaintiff agreed to submit to a urine test and "at no time refused to supply urine or blood samples."  (Doc. No. 43-2, ¶¶ 46, 57.)  The Complaint further alleges that the hospital tested Plaintiff's urine and blood samples and the test results showed that they were "negative for alcohol and all drugs of abuse."  (*Id.* at ¶ 56.)  According to the Complaint, Defendant Haggerty, however, instructed the hospital to "pour out" the urine provided by Plaintiff.  (*Id.* at ¶¶ 47, 58, 64.)  Indeed, the state appellate court went on to say, after vacating Plaintiff's convictions, that "charges in this case should have never been filed."  *City of Cleveland v. Kuhlman*, 2020 WL 3467729, at *5-6 (Ohio Ct. App. June 25, 2020).

Accordingly, the Court finds that Plaintiff has plausibly alleged that probable cause did not exist, and thus, a constitutional violation has occurred.

The Court must next examine whether this constitutional right was clearly established. Defendants argue that "there is no clearly established right for an officer to test the urine sample of an arrestee who is impaired and repeatedly flips back and forth between consenting and not consenting to a government administered urine test."  (Doc. No. 51 at 10.)  But that is not the constitutional right at issue here.  At issue here is whether the freedom from arrest in the absence of probable cause is clearly established, and that answer is yes.

"The constitutional right to 'freedom from arrest in the absence of probable cause' is clearly established within our circuit."  *Osberry*, 750 F. App'x at 392 (quoting *Courtright*, 839 F.3d at 520); *see also Parsons v. City of Pontiac*, 533 F.3d 492, 504 (6th Cir. 2008) ("The law was therefore clearly

established that arrests without probable cause violated the Constitution at the time of [the plaintiff's] arrest in 2004."); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 310 (6th Cir. 2005) ("It is beyond doubt that in 2001 'the law was clearly established that, absent probable cause to believe that an offense had been committed, was being committed, or was about to be committed, officers may not arrest an individual.'" (quoting *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999))).

Thus, at this stage, Plaintiff has plausibly alleged that Defendants Grasha and Haggerty violated her clearly established constitutional right to be free from arrest without probable cause.

Accordingly, as to Plaintiff's Count I under federal law against Defendants Haggerty and Grasha, Defendants' Motion for Judgment on the Pleadings is DENIED.

### ii.        Count II, Abuse of Process

Defendants argue that the Sixth Circuit has not recognized a claim for abuse of process under federal law, and thus Plaintiff's Count II under federal law should be dismissed.  (Doc. No. 50 at 10.) Plaintiff does not address this argument.

Based on Plaintiff's failure to address this argument, the Court deems Plaintiff to have waived any argument in opposition.  It is well established that, if a plaintiff fails to respond or to otherwise oppose a defendant's motion to dismiss, a district court may deem the plaintiff to have waived opposition.  *See, e.g.*, *Humphrey v. U.S. Attorney Gen.'s Office*, 279 F. App'x 328, 331 (6th Cir. 2008) (finding that a plaintiff's failure to oppose arguments raised in the defendants' motion to dismiss is grounds for the district court to assume that opposition to the motion is waived); *see also Selou v. Integrity Sol. Servs., Inc.*, 2016 WL 612756, at *3 (E.D. Mich. Feb. 16, 2016) ("Plaintiff's failure to address any claim but her TCPA claim in response to LiveVox's motion to dismiss is cause

for dismissing those claims."); *Ullmo v. Ohio Tpk.*, 126 F. Supp. 3d 910, 919 (N.D. Ohio 2015) (finding that plaintiff abandoned claim where he failed to respond to defendant's motion to dismiss).

Further, Defendants are correct that the Sixth Circuit does not recognize a federal claim for abuse of process under 42 U.S.C. § 1983. *See Moore v. WesBanco Bank, Inc.*, 612 F. App'x 816, 823 (6th Cir. 2015) ("[T]his court has consistently declined to recognize an abuse-of-process claim under 42 U.S.C. § 1983." (citing *Rapp v. Dutcher,* 557 F. App'x. 444, 448 (6th Cir. 2014) ("[A] federal abuse of process claim does not exist in the law of this circuit."))); *see also Voyticky v. Vill. of Timberlake, Ohio,* 412 F.3d 669, 676 (6th Cir. 2005) ("This court has never specifically determined whether a claim for abuse of process is a cognizable constitutional claim that can be redressed pursuant to § 1983.").

Accordingly, as to Plaintiff's Count II under federal law, Defendants' Motion for Judgment on the Pleadings is GRANTED.

### iii.        State Law Claims

Defendants also argue that Plaintiff's state law claims against Defendants Haggerty and Grasha are barred by the Political Subdivision Tort Liability Act ("PSTLA").[1]  (Doc. No. 50 at 10-14.)  Defendants argue they are entitled to protection under the PSTLA and that no exception to immunity applies.  (*Id.* at 10-11.)  Plaintiff does not address or dispute Defendants' argument and makes no reference to the PSTLA.

---

[1] Defendants also repeat and incorporate certain arguments already addressed in their motions to dismiss.  (Doc. No. 50 at 14.)  The Court will not re-address those arguments herein.

13

Thus, in light of Plaintiff's complete failure to respond to Defendants' argument, the Court finds that Plaintiff has abandoned and/or waived any remaining state law claims as against Defendants Haggerty and Grasha.

Accordingly, as to Plaintiff's remaining state law claims against Defendants Haggerty and Grasha, Defendants' Motion for Judgment on the Pleadings is GRANTED.

Further, Defendants' Motion to Strike Plaintiff's Second Brief in Opposition to Defendants' Motion for Judgment on the Pleadings is hereby rendered MOOT.

**IT IS SO ORDERED.**

Dated:  March 23, 2023               *s/Pamela A. Barker*
                                      PAMELA A. BARKER
                                      UNITED STATES DISTRICT JUDGE